<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

ROBERT HAHN,

                          Plaintiff,                    Civ. No. 2:09-cv-03639 DRD MAS

v.                                                      **O P I N I O N**

ONBOARD LLC, JONATHAN
BEDNARSH, and MARC SIDEN,

                          Defendants.

*Appearances by:*

JEFFER HOPKINSON & VOGEL
by: Melinda B. Maindens, Esq.
1600 Route 208 North
P.O. Box 507
Hawthorne, NJ 07507

        *Attorneys for Plaintiff,*

ARTHUR RUSSELL, ESQ
by: Arthur Russell, Esq.
661 Franklin Avenue
Nutley, NJ 07110

        *Attorney for Defendants.*

<u>DEBEVOISE, Senior District Judge</u>

        This matter comes before the Court on a motion to dismiss for failure to state a claim

upon which relief may be granted by defendants OnBoard LLC ("OnBoard"), Jonathan Bednarsh

("Bednarsh"), and Marc Siden ("Siden") (collectively referred to herein as "Defendants").  On June 15, 2009, Plaintiff, Robert Hahn ("Plaintiff"), filed an Amended Complaint in the Superior Court of New Jersey alleging that Defendants had breached their Employment Agreement with Plaintiff, had violated the implied covenant of good faith and fair dealing, and that Siden and Bednarsh as individuals had tortiously interfered with Plaintiff's Employment Agreement and with Plaintiff's prospective economic advantage, and sought compensatory, consequential, incidental, and punitive damages, together with interest, attorney's fees, and court costs.  Defendants removed this action to this Court based on diversity jurisdiction. 28 U.S.C. § 1332.[1]  Subsequently, Defendants moved to dismiss the complaint for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6).

For the reasons set forth below Defendants' motion will be granted.

## I.  ALLEGATIONS OF THE AMENDED COMPLAINT

On a Rule 12(b)(6) motion the moving party must rely upon the allegations of the complaint, accepting them as true.  The complaint, however, is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.  Although dispositive of the motion, Plaintiff did not attach a copy of the September 19, 2007 Employment Agreement between Plaintiff and OnBoard (the "Employment Agreement").  Defendants placed the Employment Agreement in the record, and its terms will be deemed incorporated in the complaint.

---

[1] Defendants contend that the damages alleged by Plaintiff are not and cannot be as great as Plaintiff alleges. However, in supporting a claim for breach of contract, Plaintiff has adequately pled the damages requirement. Merely because Plaintiff's recoverable damages cannot be as great as he is seeking does not preclude him from meeting the pleading requirements of Rule 12(b)(6).  As for any jurisdictional issues with regards to amount in controversy, the court determines the amount in controversy based on a plaintiff's allegations at the time the action is commenced, not after partial dismissal of claims or summary judgment on certain issues. Tongkook America, Inc. v. Shipton Sportswear Co., 14 F.3d 781, 784 (2d Cir. 1994).  Therefore, despite the fact that it appears that Plaintiff cannot recover more than $30,000 does prevent this court from exercising jurisdiction pursuant to 28 U.S.C. § 1332.

OnBoard is a limited liability company organized and conducting business in the State of New York. (Amend. Compl. ¶ 2.) At the time this litigation arose and at all relevant times, Marc Siden was OnBoard's Chief Executive Officer, and Jonathan Bednarsh was OnBoard's President and Chief Financial Officer. (Amend. Compl. ¶¶ 3, 4.)

Robert Hahn is a resident of New Jersey. Prior to his employment by OnBoard he held the position of Senior Director for Interactive Marketing at a publicly treaded Fortune 500 company where he performed superlatively and was considered a rising star. (Amend. Compl. ¶ 6.) On or about September 17, 2007, OnBoard hired Plaintiff as the Senior Vice President of marketing. (Amend. Compl. ¶ 5.)

The Employment Agreement provided that Plaintiff would be paid an annual base salary of $120,000 plus a quarterly bonus "determined solely at management's discretion." (Agreement ¶ 2.) There was a provision that in the event a so-called "Exit Event" occurred, Plaintiff would receive payment:

> 2.1      In addition, should an Exit Event occur, in the event that OnBoard (or substantially all of OnBoard's assets) are acquired by another company while you are employed at OnBoard, then OnBoard shall make the following payments to you:
>
> 2.1.1   0.5% of the Purchase Price, or Final Valuation, depending on the type of Exit Event.
>
> 2.1.2   Furthermore, OnBoard shall make an additional payment based upon the purchase price or final valuation of OnBoard in an Exit Event according to the following table:
>
>        [There followed a table of amounts to be paid]

(Agreement ¶ 2.1.) The Employment Agreement defined "Exit Event" as an event in which:

> 2.1.5.1      OnBoard (or substantially all of OnBoard's assets) are acquired by another company; or
>
> 2.1.5.2      A public offering of stock or stock equivalents; or
>
> 2.1.5.3      A formal dissolution of OnBoard followed by a distribution of assets.

(Agreement ¶ 2.1.5.)

3

Critical to Defendant's motion to dismiss are the Employment Agreement's employment and termination provisions:

7    "AT WILL" EMPLOYMENT AND TERMINATION.  Your employment with OnBoard will be "at will," meaning that either you or OnBoard will be entitled to terminate your employment at any time for any reason, with or without cause.  Any contrary representations which may have been made to you are superseded by this offer.  This is the full and complete agreement between you and OnBoard on this term.  Although your job duties, title compensation and benefits, as well as the OnBoard's personnel policies and procedures, may change from time to time, the "at will" nature of your employment may only be changed in an express writing signed by you and approved by OnBoard's executive management.

If you terminate your employment, you will forfeit any bonus remaining in the period in which you are terminated and any vested and/or unvested interest in an Exit Event.

If you are terminated for Cause, you will forfeit any bonus remaining in the period in which you are terminated.  In addition, the Exit Event payments of Section 2.1.2 above will be nullified.  OnBoard shall provide a severance payment in accordance with company policies in effect.

If you are terminated without Cause during the first 180 days of your employment, then OnBoard agrees to pay you three months salary as severance over the course of the three months following your termination.  In addition, OnBoard shall make a lump sum payment of $25,000 at the time of your termination.

If you are terminated without Cause after the first 180 days of your employment, then OnBoard agrees to pay you three months salary as severance over the course of the three months following your termination.  In addition, the Exit Event payment rights shall survive the termination, unless OnBoard elects to buy back the rights at the fair market value of the Company at the time of termination as determined by the specifics of the plan referenced in 2.1.6 above.

In the event of a termination without cause after the first 180, OnBoard will redeem your Exit Event payment rights according to the following schedule:

If such termination occurs before your first anniversary date (but after your first 180 days of employment) = 0.50% of FMV

If such termination occurs before your second anniversary date (but after your first anniversary date) = 0.88% of FMV (0.5% initial grant, plus valuing the Additional Payments of 2.1.2 at 0.33%)

If such termination occurs before [sic] at any time after your second anniversary date = 1.16% of FMV (0.5% initial grant, plus valuing the Additional Payments of 2.1.2 at 0.66%)

In the event that the Additional Payments as computed under 2.1.2 is greater than the above schedule, then the greater number will be used instead.

(Agreement ¶ 7.)

Paragraph 7.6 of the Employment Agreement defined "Cause" with considerable specificity.  However, because Plaintiff was not terminated for cause there is no need to set forth those provisions at length.  The Amended Complaint alleges that the Employment Agreement provided at ¶ 7(2) that:

> If you are terminated without cause, OnBoard agrees to make a lump sum payment equal to twenty-four (24) months of your base salary at the time of termination.  In addition, unless OnBoard elects to buy back the rights at either (a) the fair market value of the Company at the time of termination, or (b) $30 million, whichever is higher.  The provision may be changed by the formalization of the Exit Event payment process within the first 90 days.

(Amend. Compl. ¶ 10.)  No such provision is to be found in the Employment Agreement.

Until May 5, 2009, Plaintiff performed his duties as Vice President of marketing in accordance with the Employment Agreement, earning superior reviews and discretionary bonuses every quarter in which he was eligible. (Amend. Compl. ¶ 13.)  On May 5, 2009, Plaintiff was summoned by Siden and Bednarsh to a meeting during the course of which Siden and Bednarsh multiple times tried to intimidate Plaintiff into agreeing to resign from his position at OnBoard with the aim of nullifying OnBoard's obligation to Plaintiff upon termination under the Employment Agreement, including the right to Exit Event payments. (Amend. Compl. ¶ 14.)

Plaintiff did not resign; his employment with OnBoard was terminated without cause and without the occurrence of an Exit Event. (Amend. Compl. ¶ 14, 15.)  In his Brief Plaintiff elaborates on this May 5, 2007 meeting stating, "[he] was however aware that Siden and Bednarsh had been posturing when they distorted his work history and that they had concocted their [savage denunciations of his performance, replete with false accusations] for one purpose only: to avoid OnBoard's obligation to honor or redeem his Exit Event rights." (Pl. Brief at 5.)

Plaintiff's Amended Complaint contains three counts asserting 1) breach of contract, 2) breach of the implied covenant of good faith and fair dealing implied contained in the

Employment Agreement, and 3) a medley of potential claims, none of which is clearly stated. As damages, Plaintiff alleged in the Amended Complaint that he was entitled to twenty-four (24) months salary as a severance package amounting to a $240,000 Termination Payment. (Amend. Compl. ¶ 16). In addition, Plaintiff sought compensatory, consequential, incidental, and punitive damages, together with interest, attorney's fees, and court costs.

## II. DISCUSSION

**A.  Standard of Review:** Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a complaint for failure to state a claim upon which relief can be granted.  When considering a Rule 12(b)(6) motion, the court must accept the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff.  Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997).  The court's inquiry, however, "is not whether plaintiffs will ultimately prevail in a trial on the merits, but whether they should be afforded an opportunity to offer evidence in support of their claims."  In re Rockefeller Ctr. Prop., Inc., 311 F.3d 198, 215 (3d Cir. 2002).

The Supreme Court recently clarified the Rule 12(b)(6) standard in two cases: Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), and Bell Atlantic Corporation v. Twombly, 550 U.S. 544 (2007). The decisions in those cases abrogated the rule established in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim, which would entitle him to relief."  In contrast, Bell Atlantic, 550 U.S. at 545, held that "[f]actual allegations must be enough to raise a right to relief above the speculative level."  Thus, the assertions in the complaint must be enough to "state a claim to relief that is plausible on its face," id. at 570, meaning that the facts alleged "allow[] the court to draw the reasonable inference that the

defendant is liable for the conduct alleged." Iqbal, 129 S. Ct. at 1949; see also, Phillips v. County of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008) (In order to survive a motion to dismiss, the factual allegations in a complaint must "raise a reasonable expectation that discovery will reveal evidence of the necessary element," thereby justifying the advancement of "the case beyond the pleadings to the next stage of litigation.").

When assessing the sufficiency of a complaint, the Court must distinguish factual contentions – which allege behavior on the part of the defendant that, if true, would satisfy one or more elements of the claim asserted – from "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Iqbal, 129 S. Ct. at 1949. Although for the purposes of a motion to dismiss the Court must assume the veracity of the facts asserted in the complaint, it is "not bound to accept as true a legal conclusion couched as a factual allegation." Id. at 1950. Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id.

In the present case the allegations of the Amended Complaint and the unambiguous terms of the Employment Agreement establish that Plaintiff has failed to state a claim for relief.

**B.  Breach of Contract:** In the First Count of his Amended Complaint Plaintiff asserts that he was entitled to two kinds of payments when OnBoard terminated him without cause on May 5, 2009. Relying on ¶ 7(2) of the Employment Agreement he asserts that he "became entitled, upon the termination of his employment, to payment of 24 months of his base salary (hereinafter, the "Termination Payment"), which was $120,000 a year at the time of the termination of his employment." (Amend. Compl. ¶¶ 10, 16.) Plaintiff also seeks payment of his

Exit Event payments, although it is uncertain whether he claims such payment now or in the future upon the happening of an Exit Event.

As for the present payment of $240,000 which Plaintiff demands, there is no provision in the contract which grants Plaintiff the right to such a payment.  The paragraph to which he refers in support of this claim, ¶ 7(2), states "[i]f you are terminated for Cause, you will forfeit any bonus remaining in the period in which you are terminated.  In addition, the Exit Event payments of Section 2.1.2 above will be nullified.  OnBoard shall provide a severance payment in accordance with company policies in effect."  Plaintiff was not terminated for cause, and therefore this Section has no bearing on the case and certainly does not support Plaintiff's claim for $240,000.

Plaintiff, an at will employee, was simply terminated without cause, and the Employment Agreement sets forth his rights in that circumstance:

> If you are terminated without Cause after the first 180 days of your employment, then OnBoard agrees to pay you three months salary as severance over the course of the three months following your termination.  In addition, the Exit Event payment rights shall survive the termination, unless OnBoard elects to buy back the rights at the fair market value of the Company at the time of termination as determined by the specifics of the plan referenced in 2.1.6 above.

(Agreement ¶ 7.4.)  The Employment Agreement then goes on to set formulas for computing the price to be paid if OnBoard elected to buy back a terminated employee's Exit Event payment rights.

An "Exit Event" is described in ¶ 2.1 of the Employment Agreement:

> 2.1.5   Exit Event is defined as an event in which
> 2.1.5.1     OnBoard (or substantially all of OnBoard's assets) are acquired by another company; or
> 2.1.5.2     A public offering of stock or stock equivalents; or
> 2.1.5.3     A formal dissolution of OnBoard followed by a distribution of assets.

It is undisputed that an Exit Event had not occurred at the time of Plaintiff's termination, and therefore he was not entitled to payment on account of an Exit Event.  His rights to such payment survived his termination and would arise if an Exit Event occurred in the future.  OnBoard had not and has not elected to buy back these rights, and therefore Plaintiff has no claim based on the buy back provision.

The Amended Complaint acknowledges the limited nature of his payment rights: "Plaintiff also became entitled, upon the termination of his employment, to retain his Exit Event payment rights or to payment in the event OnBoard elected to buy back his Exit Event payment rights, as provided in the Agreement." (Amend. Compl. ¶ 17.)

It is not clear from the record whether OnBoard has paid Plaintiff the three months salary to which he became entitled upon termination of his employment.  If not, it must, of course, do so.  OnBoard does not owe Plaintiff any payment on account of an Exit Event at this time; such a payment will not be owing until and unless such an Event occurs in the future.  The First Count of the Amended Complaint will be dismissed subject to OnBoard's payment to Plaintiff of three month's salary.

**C. Breach of the Implied Covenant of Good Faith and Fair Dealing:**  In both New York and New Jersey, a plaintiff cannot maintain a claim for breach of the implied covenant of good faith and fair dealing when the conduct at issue is governed by the terms of an express contract or the cause of action arises out of the same conduct underlying the alleged breach of contract. See Wade v. Kessler Inst., 798 A.2d 1251, 1259-60 (N.J. 2002); ICD Holdings S.A. v. Frankel, 976 F. Supp. 234, 243-44 (S.D.N.Y. 1997).  The resolution of Plaintiff's claim is governed by the terms of an express contract and arises out of the same action underlying Plaintiff's claim for breach of contract.  It follows that Plaintiff may not maintain a separate

action for breach of the implied covenant of good faith and fair dealing as it would be duplicative of the breach of contract claim.  Consequently the Second Count must be dismissed.

     **D.  Third Count:** It is difficult to decipher just what legal theory underlies the Third Count.  It states in its entirety:

> 1.  Plaintiff repeats each and every allegation contained in the First and Second counts as if fully set forth herein at length.
> 2.  Bednarsh and Siden falsified plaintiff's performance record and made false and defamatory accusations and statements to other officers, directors and/or employees of OnBoard regarding plaintiff's job performance, all with the intent of arranging for plaintiff's employment to be terminated in such a way as to ostensibly relieve OnBoard of its obligations to pay the Termination Payment to him and to uphold his Exit Event rights as required in the Agreement between plaintiff and OnBoard.
> 3.  By virtue of the false, malicious and deceptive acts by Bednarsh and Siden as aforesaid, plaintiff has been deprived of his Termination Payment and his Exit Event rights.
> 4.  As a direct and/or proximate consequence of the aforesaid course of conduct by Bednarsh and Siden, plaintiff has been wrongfully deprived of his contractual rights and reasonable expectation of economic advantage

(Amend. Compl. ¶¶ 1-4.)

     Defendants extract from these conclusory  bare bones allegations possible causes of action that Plaintiff may be trying to assert: (i) tortious interference with a contract; (ii) tortious interference with economic relationship or prospective business advantage; (iii) defamation; and (iv) fraud.  Having established these straw theories, Defendants proceed with learning and erudition to knock each one down.

     The legal elements for tortious interference with a contract and tortious interference with prospective economic advantage are the same in both New York and New Jersey. See Marks v. Struble, 347 F. Supp. 2d 136, 143 (D.N.J. 2004) (finding that there was "no conflict … because New Jersey and New York law on tortious interference with an existing contract are in accord"); see also G-I Holdings, Inc. v. Baron & Budd, 179 F. Supp. 2d 233, 250 (S.D.N.Y. 2001).  Both tortious interference with a contract and tortious interference with prospective economic

advantage require the defendant to be a third party, either to the contract or within the context of the business relationship. See Silvestre v. Bell Atl. Corp., 973 F. Supp. 475, 486 (D.N.J. 1997); Ross v. Celtron Int'l, Inc., 494 F. Supp. 2d 288, 305 (D.N.J. 2007); Albert v. Loksen, 239 F.3d 256, 274 (2d Cir. 2001).  In this regard, a corporate officer or employee is not a third party and cannot be held liable for interfering with a contract between the corporation and another employee. See McDermott v. Chilton Co., 938 F. Supp. 240, 247 (D.N.J. 1995); Fregara v. Jet Aviation Business Jets, 764 F. Supp. 940 (D.N.J. 1991); Roselink Investors, L.L.C. v. Shenkman, 386 F. Supp. 2d 209, 228 (S.D.N.Y. 2004).

It is undisputed that Defendants Siden and Bednarsh are officers of OnBoard and thus cannot tortiously interfere with the employment contract between OnBoard and Plaintiff because they are not third parties.  Therefore, Plaintiff's claim for tortious interference with a contract and prospective economic advantage cannot be maintained.

Any claims for defamation or fraud are so patently deficient that detailed discussion is unnecessary.  Further, in his Opposition Brief, Plaintiff states that he is not pursuing defamation and fraud claims.  The nub of the Third Count is that Bednarsh and Siden made false statements about Plaintiff's performance record and badgered him at the May 5, 2009 meeting either to intimidate him into resigning or to create a basis for terminating him for cause, all for the purpose of depriving him of his right to termination benefits, including Exit Event payments or a buyout under the Employment Agreement.

It may be assumed that Bednarsh and Siden acted for the most reprehensible motives. The long and short of it is, however, that they failed to deprive Plaintiff of his rights under the Employment Agreement, because Plaintiff did not voluntarily leave OnBoard and he was not terminated for cause.  OnBoard terminated him and he remained entitled to the termination

benefits provided for in ¶ 7.4 of the Employment Agreement.  Whatever motives Bednarsh and Siden may have had, they caused Plaintiff no damages apart from ruffled feelings.  The Third Count must be dismissed.

In light of the undisputed terms of the Employment Agreement and the admissions contained in the Amended Complaint, it is unlikely that Plaintiff could submit a viable Second Amended Complaint.  However, if Plaintiff wishes to do so it may file a motion to file a second amended complaint within 30 days of the date of the order implementing this opinion.

## III.  CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss Plaintiff's Amended Complaint is granted.  The Court will enter an order implementing this opinion.

**        s/ Dickinson R. Debevoise        **
DICKINSON R. DEBEVOISE, U.S.S.D.J.

Dated: November 16, 2009