<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

_____
                                      :
ROBERT HAHN,                       :
                                        :     Civil Action No. 09-3639 (MAS)
              Plaintiff,         :
                                          :
        v.                          :     **OPINION**
                                        :
ONBOARD, LLC, et al.,        :
                                        :
              Defendants.     :
_____:

**SHIPP, Michael A., United States Magistrate Judge**

       This matter comes before the Court on a motion for summary judgment submitted by Plaintiff Robert Hahn ("Plaintiff") on his claim against Defendants OnBoard, LLC ("OnBoard"), Jonathan Bednarsh ("Bednarsh") and Marc Siden ("Siden") (collectively referred to herein as "Defendants") for termination without cause from his employment with OnBoard, and against Defendants' counterclaims for (1) breach of duty of good faith and loyalty; (2) breach of contract; and (3) a permanent injunction.  (Docket Entry Number ("Doc. No.") 48 ("Pl.'s Moving Br.").)  Defendants oppose Plaintiff's motion.  (Doc. No. 64 ("Defs.' Opp'n Br.).)

       Notably, this Court previously dismissed Plaintiff's second and third counts.  Plaintiff's first count was partially dismissed to the extent that Plaintiff sought relief in excess of $30,000, which is the amount provided in Plaintiff's employment contract with OnBoard ("Employment Agreement") in the event that he was terminated without cause.[1]  On August 5, 2010, Plaintiff

---

[1] The Employment Agreement also provided for "Exit Rights" due to Plaintiff if, among other things, the company was bought out.  However, the parties agree that none of the conditions giving rise to the Exit Rights have been triggered.  And, while Plaintiff is entitled to the Exit Rights if he proves Defendants terminated him without cause, they serve only to quantify damages and will not be discussed in this Opinion.

filed a Second Amended Complaint, requesting, among other things, an award of $30,000 as severance for being terminated without cause.  (*See generally*, Doc. No. 38 ("Amended Compl.").)  Defendants filed an Answer and Verified Counterclaim on August 8, 2010, requesting that Plaintiff's claims be denied, asserting affirmative defenses and filing counterclaims against Plaintiff.  (*See generally*, Doc. No. 37 ("Answer").)  Plaintiff now moves for summary judgment on the ground that Defendants did not raise genuine issues of material fact on his claim for termination without cause and on Defendants' counterclaims.

Pursuant to Federal Rule of Civil Procedure 78(b), the Court shall decide the motion on the papers.  For the reasons expressed below, and for other good cause shown, Plaintiff's motion for summary judgment is **DENIED**.

## I.     BACKGROUND

OnBoard is a limited liability company that conducts business in and under the laws of the State of New York.  (Amend. Compl. ¶ 2.)  At the commencement of this litigation, and at all relevant times, Siden was OnBoard's Chief Executive Officer.  Bednarsh was OnBoard's President and Chief Financial Officer. (*Id.* at ¶¶ 3-4.)  OnBoard provides technology, information and related services to parties engaged in real estate, publishing, marketing and finance.  (Pl.'s St. of Undisp. Mat. Facts ("PUMF") ¶ 2; Defs.' Opp'n to PUMF ¶ 2.)

On or about September 19, 2009, Plaintiff, a resident of New Jersey, entered into an "at-will" Employment Agreement with Defendants to become Vice President of Marketing for OnBoard.  (PUMF ¶ 6; Defs.' Opp'n to PUMF ¶ 6.)  Until the end of Plaintiff's employment on May 5, 2009, the only written report of his performance gave him a 3.1 out of a possible 5.0 overall rating during the fourth quarter of 2008.  (PUMF ¶ 8; Defs.' Opp'n to PUMF ¶ 8.)

The Employment Agreement provided OnBoard with the right to terminate Plaintiff's employment for any reason and at any time, with or without cause. (Agreement § 7.) In connection with termination, the Employment Agreement included the following contingencies:[2]

[1]     If you terminate your employment, you will forfeit any bonus remaining in the period in which you are terminated and any vested and/or unvested interest in an Exit Event.

[2]     If you are terminated for Cause, you will forfeit any bonus remaining in the period in which you are terminated. In addition, [any] Exit Event payments . . . will be nullified. OnBoard shall provide a severance payment in accordance with company policies in effect. . . .

[3]     If you are terminated without Cause . . . then OnBoard agrees to pay you three months salary as severance over the course of the three months following your termination. In addition, the Exit Event payment rights shall survive the termination, unless OnBoard elects to buy back the rights at the fair market value of the Company at the time of termination.

(*Id*. at §§ 7.1-7.5.) Based on the aforementioned provisions, the question of whether Plaintiff voluntarily terminated his employment contract or OnBoard unilaterally terminated him is of paramount concern to the parties. If Plaintiff resigned, he is owed nothing. If, on the other hand, Plaintiff was terminated with or without cause, he is entitled to compensation under the Employment Agreement.

From March 24 to March 28, 2008, OnBoard paid Plaintiff and several other employees to attend a trade conference in Arizona ("Conference") on its behalf. (PUMF ¶ 15; Defs.' Opp'n to PUMF ¶ 15.) During the Conference, Plaintiff held a one-hour focus group, participated in one hour of sales meetings, and helped set up OnBoard's display booth. (PUMF ¶ 17; Defs.' Opp'n to PUMF ¶ 17.) Plaintiff also distributed "blog" cards in connection with his website and

---

[2] The Employment Agreement also provided additional compensation plans if Plaintiff was terminated prior to 180 days from the start of his employment with OnBoard. Since that is not the case here, those clauses are irrelevant.

blog.[3]  (PUMF 4, ¶¶ 17-18; Defs.' Opp'n to PUMF ¶¶ 17-18.)  In fact, Plaintiff concedes that he may have distributed his card to a representative of Metropolitan Regional Information Systems, Inc. ("MRIS"), which at the time of the Conference, was one of OnBoard's client.  (Hahn Dep. Tr. 304:2-8; Pl.'s Moving Br. 11; PUMF ¶¶ 30-35; Defs.' Opp'n to PUMF ¶¶ 30-35.)  While Defendants were aware that Plaintiff ran a website and blog during his employment with OnBoard, Siden asserts that he did not know that Plaintiff was distributing his personal cards at the Conference and did not condone such conduct.  (Defs.' Opp'n to PUMF ¶ 22.)

Subsequent to the Conference, during an April 28, 2009 meeting between Plaintiff and Siden, Plaintiff voluntarily offered to leave his full-time position with OnBoard, but Siden insisted that Plaintiff remain as a full-time employee.  (PUMF ¶¶ 9-10; Defs.' Opp'n to PUMF ¶¶ 9-10.)  On May 5, 2009, Plaintiff again met with Siden, joined by Bednarsh, in Siden's office.  (PUMF ¶ 11; Defs.' Opp'n to PUMF ¶ 11.)  At the end of that meeting, Plaintiff was no longer employed with OnBoard, though the parties are sharply divided as to which party initiated and is ultimately responsible for terminating the Employment Agreement.  (Defs.' St. of Undisp. Mat. Facts ("DUMF") at ¶ 18; Pl.'s Opp'n to DUMF ¶ 18.)

Significantly, on the same date that Plaintiff's employment with OnBoard ended, Plaintiff registered a limited liability company, 7DS Associates, LLC ("7DS"), with the state of New Jersey.  (PUMF ¶ 48; Defs.' Opp'n to PUMF ¶ 48.)  While Plaintiff does not dispute that 7DS is a competitor of OnBoard, the parties disagree as to whether 7DS's principal area of business is corporate strategy (PUMF ¶ 49) or real estate consulting (Defs.' Opp'n to PUMF ¶ 49).  (*See*

---

[3] The cards featured the text:  ROBERT HAHN, THE NOTORIOUS R.O.B., and included Plaintiff's website and blog address, email, cellular phone number and Twitter web address.  The parties disagree as to whether the cards should be termed "business" or "blog" cards.  The Court will refer to them as "blog" cards herein, although the semantic distinction, if of any relevance at all, is a factual matter that is not dispositive on this motion.

DUMF ¶ 8; PUMF response at ¶ 8.)  Regardless, from January to May 2010, Plaintiff was employed by MRIS, which was no longer OnBoard's client.  (PUMF ¶ 37; Defs.' Opp'n to PUMF ¶ 37.)  After his employment with MRIS ended, MRIS eventually retained Plaintiff to provide consulting services through 7DS.  (PUMF ¶ 38; Defs.' Opp'n to PUMF ¶ 38.)  Plaintiff's 7DS business and relationship with MRIS caused Defendants concern, because during his employment with OnBoard, Plaintiff procured and continues to retain OnBoard's confidential documents.  (DUMF 6, ¶ 22; Pl.'s Opp'n to DUMF 5.)  Despite Defendants requests, Plaintiff has refused to return the documents and/or confirm that they have been destroyed.  (Answer 17, ¶ 54; *see* Pl.'s Opp'n to DUMF 5, ¶ 22.)

## II.    <u>DISCUSSION</u>

As discussed above, Plaintiff moves for summary judgment on his claims and Defendants' counterclaims.  Plaintiff argues that he is entitled to three months of severance pay under the terms of the Employment Agreement and that Defendants have raised no genuine issues of material fact to counter same.  In support of this assertion, Plaintiff relies on his testimony that Siden and Bednarsh pressured his resignation and/or orchestrated his termination to appear as a resignation.  Similarly, Plaintiff asserts that summary judgment is proper with respect to Defendants' counterclaims, urging that Defendants have failed to bring forward any triable facts to overcome Plaintiff's testimony.  According to Plaintiff, he never acted in bad faith or with disloyalty, he did not solicit clients on OnBoard's time or to the company's detriment and he never distributed OnBoard's confidential documents to the detriment of OnBoard.  However, in spite of Plaintiffs' assertions to the contrary, the Court finds that Defendants have in fact raised material issues of fact with respect to their counterclaims and Plaintiff's termination without cause claim.

For the reasons discussed below, and for other good cause shown, Plaintiff's summary judgment motion is denied.

### A.   Standard of Review

Summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  An issue is genuine if there is sufficient evidentiary support such that "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is material if it has the ability to "affect the outcome of the suit under governing law." *Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006).  Disputes over irrelevant or unnecessary facts will not preclude a court from granting summary judgment.

The party moving for summary judgment has the initial burden of proving an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986).  If the non-moving party bears the burden of proof at trial, the movant may discharge its burden by pointing to an absence of evidence necessary to support non-movant's claim. *Id.* at 325.  Alternatively, a moving party may submit affirmative evidence that negates a material element of the non-moving party's claim. *Id.*  If movant brings such affirmative evidence, or makes a showing that non-movant lacks evidence essential to its claim, the burden shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324.  The burden of persuasion, however, rests ultimately on the non-moving party to establish each element necessary to succeed on the claims on which it bears the burden of proof at trial. *Celotex*, 477 U.S. at 322.

To decide whether an issue of material fact exists, the Court must consider all facts, drawing all reasonable inferences in a light most favorable to the non-moving party. *Kaucher*,

6

455 F.3d at 423.  However, on a motion for summary judgment, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.  Absent a genuine issue for trial, summary judgment as a matter of law is proper.

Finally, this Court agrees with the parties that New York law applies to the underlying claims.  The Employment Agreement lacks a choice-of-law provision and, as such, the claims arising from it must be construed under the substantive law of "the jurisdiction with the most significant relationship with the transaction and the parties." *Pepe v. Rival Co.*, 85 F. Supp. 2d 349 (D.N.J. 1999), *aff'd*, 254 F.3d 1078 (3d Cir. 2001).  Here, Plaintiff worked and Defendants operated in New York.  Furthermore, "New Jersey courts have consistently applied the law of the state of employment to workplace claims . . . ." *Satz v. Taipina*, No. 01-5921, 2003 WL 22207205, at *16 (D.N.J. Apr. 15, 2003), *aff'd*, 122 F. App'x. 598 (3d Cir. 2005).

**B.     Plaintiff's Termination Without Cause Claim**

Plaintiff maintains that he is entitled to summary judgment on his claim to recover $30,000, pursuant to the Employment Agreement, for being terminated without cause by OnBoard.  However, Defendants argue that Plaintiff's summary judgment motion on this claim must fail, because there are genuine issues of material fact in dispute regarding how and why Plaintiff's employment with OnBoard ended.  In fact, Defendants submitted affidavits by OnBoard employees that contain facts, examples and assertions to support their claim that Plaintiff voluntarily resigned.  (Crouse Aff. ¶ 3; Ret Aff. ¶¶ 3-6.)  For instance, the internal paperwork related to the end of Plaintiff's employment was processed by Ms. Cheryl Crouse, OnBoard's former Human Resource Manager.  (Crouse Aff. ¶ 3.)  In processing the relevant documents, Ms. Crouse used OnBoard's standard protocol for employees who resign, as opposed

to applying any of the procedures that accompany employee terminations.[4]  (*Id.*)  Similarly, Ms. Stacey Ret, OnBoard's Director of Marketing and former Director of Events in the company's Marketing Department, attests that Plaintiff had previously declared an intention to resign.  (Ref. Aff. ¶ 5.)  Specifically, Ms. Ret indicated that one month before the employment relationship dissolved, Plaintiff told her to "get ready to start taking over the marketing department."  (*Id.*)  Finally, to further support the contention that Plaintiff resigned voluntarily, Defendants rely on Siden's and Bednarsh's testimony, regarding the meetings that led to Plaintiff's alleged voluntary resignation.  (Siden Dep. Tr. 49:15-51:20; Bednarsh Dep. Tr. 60:5-25.)

Plaintiff vehemently disagrees with Defendants' position, maintaining that Ms. Crouse's familiarity with the procedures for processing employees who resign does not overcome Plaintiff's testimony that he was involuntarily terminated.  (Pl.'s Reply Br. 6.)  As for the statement made to Ms. Ret, Plaintiff argues that her interpretation of the underlying meaning of Plaintiff's statement is not evidence and is irrelevant, as it occurred prior to his termination.  (*Id.* at 6-7.)  Finally, with regard to Siden and Bednarsh, Plaintiff characterizes their testimony as hearsay, self-serving and illogical.  (Pl.'s Moving Br. 32.)

Here, because Plaintiff bears the burden of proof at trial, the Court must consider whether all material facts forming the basis of Defendants' assertions that Plaintiff resigned from OnBoard voluntarily have been successfully and undeniably eliminated.  Viewing the facts in a light most favorable to Defendants, the Court finds that Defendants have offered triable evidence that warrants denial of Plaintiff's motion for summary judgment.  Indeed, Plaintiff has not offered any evidence to cast doubt upon the declarations of Ms. Crouse.  Even if, *arguendo*,

---

[4] These steps include, among other things, filling out paperwork to close an employee's file with OnBoard's payroll company, providing the employee with COBRA notification; speaking with OnBoard's IT Department about suspending employee's access to company phones, email and blackberry; and deactivating employee's building access code.

Plaintiff was able to prove that his termination was intentionally disguised as a resignation, Ms. Crouse's affidavit remains uncontroverted and, at a minimum, creates a factual dispute that could affect the outcome of this case at trial. Similarly, Plaintiff has not refuted the declarations in Ms. Ret's affidavit. Instead, Plaintiff attacks Ms. Ret's belief that his statement to her amounted to an intention to resign. Even if her belief is entirely inadmissible, Plaintiff has not disproved the objective declarations in Ms. Ret's affidavit in their entirety and a rational jury could find that Plaintiff's statements to Ms. Ret about taking over OnBoard's Marketing Department intimated an intention to resign.

As for Siden and Bednarsh's testimony, Plaintiff has failed to set forth clear grounds to support a finding that the testimony is hearsay, as Siden and Bednarsh were indisputably present at the May 5, 2009 meeting, during which Plaintiff's employment with OnBoard ended. Therefore, their assertions that Plaintiff voluntarily resigned during the meeting must be considered for purposes of deciding Plaintiff's motion. Further, Plaintiff's belief that these statements "contradict logic" or are "self-serving" does not completely overcome or undermine the credibility of Defendants' testimony.

The Court's role in reviewing a summary judgment motion is not to weigh the facts but rather to determine whether there are genuine issues of fact that could affect the outcome of the case. *Anderson*, 477 U.S. at 249. In the instant matter, the Court finds that Plaintiff has not successfully refuted OnBoard's evidence, particularly the facts set forth in the employee affidavits, and has failed to cast sufficient doubt on Defendants' testimony to warrant summary judgment. Thus, the Court finds that genuine issues of material fact exist with respect to the May 5, 2009 meeting and the termination of Plaintiff's employment with OnBoard. As such, summary judgment on Plaintiff's termination without cause claim must be denied.

C.    <u>**Defendants' Counterclaims**</u>

      i.    <u>***Breach of Duty of Good Faith and Loyalty***</u>

Defendants allege that Plaintiff breached his duty of good faith and loyalty owed to OnBoard by, among other ways, promoting and planning for a future competing business, 7DS, using OnBoard's time and resources.[5]  Every employment contract imposes a duty of loyalty even in the absence of an express provision creating such a duty.  *DDS Partners, LLC v. Celenza*, 16 A.D.3d 114, 115 (N.Y. App. Div. 2005).  Under the duty of loyalty doctrine, employees have "an affirmative duty at all times to act in [their] employer's best interests," and employers can form a viable claim even absent allegations of particular injuries resulting from an employee's disloyal conduct.  *Maritime Fish Prods., Inc. v. World-Wide Fish Prods., Inc.*, 100 A.D.2d 81, 89 (N.Y. App. Div. 1984).  When an employee violates the duty of loyalty, the employer "has a choice of remedies" to recover any benefits conferred upon the employee during the period of disloyalty, including wages paid to the employee.  *W. Elec. Co. v. Brenner*, 41 N.Y.2d 291, 295 (1977); *accord Maritime Fish Prods., Inc.*, 100 A.D.2d at 88.

New York courts have broadly defined conduct that may give rise to a breach of duty of loyalty claim.  *W. Electric Co.*, 41 N.Y.2d at 295 ("[A]n employee who . . . receives a benefit in

_____

[5] As a threshold matter, Plaintiff urges the Court to dismiss Defendants' breach of duty of good faith counterclaim as duplicative of the breach of contract counterclaim.  *Phx. Racing, Ltd. v. Lebanon Valley Auto Racing Corp.*, 53 F. Supp. 2d 199, 216 (N.D.N.Y. 1999).  It is not clear, however, that the facts and allegations concerning Defendants' breach of contract claim are duplicative of those at issue here.  Defendants' breach of contract claim alleges that Plaintiff removed and continues to retain confidential documents, which violates the express provisions of the Employment Agreement.  Defendants' breach of good faith and duty of loyalty claims, on the other hand, pertain to entirely different facts, e.g., that Plaintiff used the time and resources of OnBoard in order to further his future interests in 7DS.  *See Bender Ins. Agency, Inc. v. Treiber Ins. Agency, Inc.*, 283 A.D.2d 448, 450 (N.Y. App. Div. 2001).  Regardless, such a determination is not required since Defendants' allegations in their first counterclaim amount to a breach of duty of loyalty claim and Plaintiff does not dispute the legal viability of such an action.  (*See* Pl.'s Reply Br. 4.)

connection with transactions conducted by him on behalf of his employer is under a duty to give such profit or benefit to his employer . . . ."); *see also 30 FPS Prods., Inc. v Livolsi*, No. 09-633, 2009 NY Slip Op. 9649 at 2 (N.Y. App. Div. Dec. 22, 2009) (soliciting job from employer's prospective client); *Mega Group, Inc. v. Halton*, 290 A.D.2d 673, 676 (N.Y. App. Div. 2002) (using employer's "time and resources to create a competing business"). While an employee "may secretly incorporate a competitive business prior to his departure," he cannot do so "us[ing] his [employer's] time, facilities or proprietary secrets to build the competing business." *Maritime Fish Prods.*, *Inc.*, 100 A.D.2d at 88.

In the instant matter, the Court finds that Plaintiff has not sufficiently disproven the facts set forth in OnBoard's employee affidavits to defeat Defendants' assertion that Plaintiff breached his duty of loyalty to OnBoard. According to Michael Demitriou, OnBoard's Director of Strategic Development and former National Sales Manager, Plaintiff distributed his blog card at the Conference and neglected his duties as an OnBoard representative. (Demitriou Aff. ¶¶ 2-5.) Ira Monko, an Implementation Engineer at OnBoard, made similar observations. (Monko Aff. ¶¶ 4-7.) Moreover, Plaintiff does not dispute that he was employed by MRIS after leaving OnBoard, that an MRIS representative attended the Conference, that he may have distributed his blog card to the MRIS representative and/or that he subsequently took on MRIS as a client of his company, 7DS. (PUMF ¶¶ 30-38.)

Instead, Plaintiff questions the legal and factual applicability of the case law Defendants refer to in support of their counterclaim. Specifically, Plaintiff relies on the fact that he did not register 7DS as a limited liability company until May 5, 2009. (Pl.'s Reply Br. 5.) According to Plaintiff, it follows that he could not have used OnBoard's resources and time to benefit 7DS since it was not created until after the Employment Agreement was terminated on May 5, 2009.

11

(*Id.*)  Similarly, in his view, Plaintiff's website and blog information were on a "blog card" and not a "business card" connected with an existing business.  (*Id.*)  Therefore, Plaintiff argues that he could not have solicited business from MRIS or other clients of OnBoard since he was not involved in a competing business at that time.

The Court, however, finds that Plaintiff's arguments are unavailing.  Defendants' duty of loyalty claim does not depend on whether Plaintiff formed 7DS during his employment with OnBoard.  Indeed, Plaintiff cites no case law to the contrary.  To establish Defendants' duty of loyalty claim, it is enough if Plaintiff "secretly pursued and profited from" disloyal acts while an employee of OnBoard.  *See 30 FPS Prods., Inc.*, 2009 NY Slip Op. 9649 at 2.  Solicitation of 7DS clients during a Conference that Plaintiff was being paid to attend as an OnBoard representative and to benefit OnBoard's business interests can certainly be deemed as a disloyal act by a rational jury.

Likewise, Plaintiff's assertion that Defendants cannot bring a claim for breach of duty of loyalty because Siden and Bednarsh permitted Plaintiff to promote his personal blog while employed at OnBoard does not warrant granting Plaintiff's motion for summary judgment on this counterclaim.  (Pl.'s Reply Br. 5.)  Siden and Bednarsh knew of the blog and permitted Plaintiff to continue with the blog even after an OnBoard client complained about the information that Plaintiff posted on it.  (Siden Dep. Tr. 41:20-51:20.)  However, during his deposition, Siden testified that he did not give Plaintiff permission to distribute his blog cards at the Conference and, importantly, that neither Siden nor Bednarsh gave Plaintiff unconditional permission to use and promote the blog.  (Defs.' Opp'n to PUMF ¶ 22; *see* Siden Dep. Tr. 42:22-25.)  Drawing all reasonable inferences in favor of the Defendant, a rational jury could find that Plaintiff was not permitted to distribute his cards at the Conference using OnBoard's time, and,

12

further, that Plaintiff's conduct was adverse to OnBoard's best interests.  Accordingly, this Court

finds good cause to deny Plaintiff's summary judgment motion on Defendants' breach of duty of

good faith and loyalty counterclaim.

### ii.        *Breach of Contract*

Defendants' breach of contract claim arises from the following confidentiality provision

in the Employment Agreement:

> You acknowledge that as an employee of OnBoard you will have access to
> confidential information which relates to the business of OnBoard. . . . You shall
> not, without the prior written consent of the President, disclose such confidential
> material, directly or indirectly, to any party *or remove from OnBoard's premises
> any notes or records relating thereto* . . . . You shall not in any manner use any
> confidential material of OnBoard . . . in any manner not specifically directed by
> OnBoard or in any way which is detrimental to OnBoard, as determined by the
> President in his sole discretion.

(Agreement § 4.1 (emphasis added).)

Plaintiff, however, does not dispute that he removed and continues to retain OnBoard's

confidential and proprietary materials, which includes hundreds of pages of confidential

documents.  (Pl.'s Reply Br. 10.)  Rather, Plaintiff moves for summary judgment on the ground

that Defendants did not provide or even allege facts to support a claim of misappropriation: that

the confidential materials were used or disseminated "in any way . . . detrimental to OnBoard."

(*Id.*)  The Court finds, however, that Plaintiff's reliance on case law is misplaced.

Plaintiff contends *Sasqua Group, Inc. v. Courtney*, No. 10-528, 2010 U.S. Dist. LEXIS

93442, at **14-15 (E.D.N.Y. Aug. 2, 2010), instructs that, in *all* claims involving employee

removal and retention of confidential documents, the employer must allege and prove that the

employee used or disseminated the documents.  (Pl.'s Reply Br. 9-10.)  There, however, the

employment contract did not expressly provide that taking and retaining confidential materials

constituted a *per se* breach of contract.  In contrast, the Employment Agreement in this case

expressly provides that Plaintiff "shall not, without the prior written consent of the President . . . remove from OnBoard's premises any notes or records relating thereto."  (Agreement § 4.1.) Accordingly, having admitted to breaching the Employment Agreement, Plaintiff cannot now ask the Court to require Defendants to show the additional element of use and/or dissemination, which is a term that neither party bargained for when voluntarily agreeing to and entering the contract.  Thus, Plaintiff's motion for summary judgment on Defendants' breach of contract counterclaims also fails and is denied.

### iii.   *Permanent Injunction*

In addition to damages, Defendants seek a permanent injunction requiring Plaintiff to return or certify the destruction of OnBoard's confidential documents.  In response, Plaintiff argues that Defendants have failed to meet the four-factor determination that governs whether a permanent injunction should be granted:

> (1) that [Defendants have] suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant[s], a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).  To constitute irreparable injury, the party seeking the injunction must show harm that is "imminent, not remote or speculative," and that irreparable harm is "likely" and not merely possible.  *Int'l Creative Mgmt. v. Abate*, No. 07-1979, 2007 U.S. Dist. LEXIS 22964, at *8 (S.D.N.Y. Mar. 28, 2007) (internal quotations omitted).  Moreover, in contrast with preliminary injunctions, permanent injunctions require the additional showing of "actual . . . success on the merits."  *Harlem Wizards Entm't Basketball, Inc. v. NBA Props.*, 952 F. Supp. 1084, 1091 (D.N.J. 1997).

Here, Defendants' assertion of immediate irreparable harm is not without triable support. Plaintiff argues that no evidence has been offered to rebut Plaintiff's testimony that he never used or disseminated the materials in question.  (Pl.'s Opp'n to DUMF ¶ 22.)  It must be noted, however, that Plaintiff formed a company that competes with OnBoard.  (*See* DUMF ¶ 8; PUMF response at ¶ 8.)  Further, as discussed above, Defendants offered sufficient evidence to support their claim that Plaintiff solicited OnBoard's former client, MRIS.  Drawing all inferences in favor of Defendants, it cannot be said that there are no genuine disputes of material fact concerning irreparable harm to OnBoard caused by Plaintiff's procurement and retention of OnBoard's confidential documents.

Moreover, the three remaining factors that govern permanent injunction determinations weigh in favor of Defendants.  First, because 7DS is a competitor of OnBoard and Plaintiff continues to retain the confidential materials, other available remedies at law may not adequately compensate for OnBoard's injury and/or loss of potential business, as such injuries may be difficult to quantify.  Second, in considering the balance of hardships, the Court finds that a permanent injunction may be warranted, as Plaintiff will not suffer any hardship by returning the materials, while Defendants stand to lose otherwise useful information and perhaps business to a competitor.  Third, permitting employees to retain confidential documents in breach of the express terms of a contract would directly contravene the strong public interest in maintaining employee-employer trust and confidentiality.  Also, because OnBoard is entitled to retain confidential information related to business practices and the like from the public, no public interest will be disserved by requiring Plaintiff to return or otherwise destroy the documents.

Accordingly, the Court finds that summary judgment on Defendants' permanent injunction counterclaim would be tantamount to granting Plaintiff a windfall in the form of

confidential materials germane to his company's primary business.  Though the standard is high for granting injunctions, this Court must draw all reasonable inferences in favor of Defendants. In doing so, the Court finds that Plaintiff's continued retention of OnBoard's confidential documents, together with his formation of a competing company, create genuine issues of material fact.  Therefore, Plaintiff's motion for summary judgment on Defendants' permanent injunction counterclaim is denied.

## III.    CONCLUSION

For the foregoing reasons, and for other good cause shown, Plaintiff's motion for summary judgment is denied.  Pursuant to Federal Rule of Civil Procedure 56, Defendants have demonstrated genuine issues of material facts for trial as to Plaintiff's termination without cause claim and Defendants' counterclaims.  An appropriate form of order will be filed together with this Opinion.

s/ Michael A. Shipp
**MICHAEL A. SHIPP**
**UNITED STATES MAGISTRATE JUDGE**

Dated: February 18, 2011